IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

DIANE REID,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

CIVIL ACTION NO.: CV212-074

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge G. William Davenport ("the ALJ") denying her claim for a period of disability and disability insurance benefits and supplemental security income. Plaintiff urges the Court to reverse and remand the ALJ's decision for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff protectively filed an application for a period of disability and disability insurance benefits as well as an application for supplemental security income on September 8, 2005, alleging that she became disabled on December 4, 1999. (Tr. at 89–92, 159). Despite Plaintiff's statement in her application that no previous application had been filed with the Social Security Administration by or for her, Plaintiff had filed prior applications on October 15, 2001, alleging the same onset date. (Tr. at 16). Those applications were denied by an Administrative Law Judge on January 31, 2003. (Id.). The ALJ determined that the prior applications should not be reopened; therefore,

the ALJ's decision considered the period from February 1, 2003, through the date of his decision. (Id.). Plaintiff alleged she became disabled due to "[n]eck, shoulder injury and numbness all over, [high blood pressure], heart mumer [sic]." (Tr. at 163). Plaintiff later added complaints of pain and swelling in her knees and an increase in pain in her right knee, right hip, and right shoulder. (Tr. at 174). After her claim was denied initially and upon reconsideration, Plaintiff filed a request for a hearing. (Tr. at 16). On November 5, 2008, the ALJ conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified. (Tr. at 481–82). Robert Bradley, an impartial vocational expert, was also at the hearing. (Id.). The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 30). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 3–9).

Plaintiff, born on March 6, 1955, was fifty-three (53) years old when the ALJ issued his final decision. She completed high school and did not attend special education classes. (Tr. at 168). Plaintiff has past relevant work experience as a longshoreman.[1] (Tr. at 27).

## ALJ'S FINDINGS

Pursuant to the Social Security Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the

---

[1] The Dictionary of Occupational Titles does not include "longshoreman." According to the testimony of the vocational expert, the most equivalent listing in the Dictionary of Occupational Titles is "dock hand." (Tr. at 503).

2

claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff had not engaged in substantial gainful activity during the period from the day after the final decision on her prior applications, February 1, 2003, through the date of

AO 72A
(Rev. 8/82)

the ALJ's decision, December 30, 2008.[2] (Tr. at 18). At step two, the ALJ determined that Plaintiff had the following conditions considered "severe" under the Regulations: borderline IQ, mild depression, and allergic rhinitis. (Tr. at 19). However, at step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. (Tr. at 22). The ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels, with the following limitations: she is limited to performing simple work that does not require prolonged personal interaction and she must be allowed to take anti-allergy medications, which do not cause any vocationally significant side effects. (Tr. at 24). At the fourth step, the ALJ determined that Plaintiff is capable of performing her past relevant work as a longshoreman/dock hand. (Tr. at 27).

## ISSUE PRESENTED

Plaintiff asserts that the ALJ made the following errors: (1) the ALJ erred by failing to consider her impairments in combination because he did not consider the extent to which her pain affects her; (2) the ALJ erred by discrediting the opinion of Dr. Hines, Plaintiff's treating physician, regarding Plaintiff's residual functional capacity; (3) the ALJ erred by not finding Plaintiff presumptively disabled under Listing 12.05; and (4) the ALJ erred by not posing complete hypothetical questions to the vocational expert.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.

---

[2] Plaintiff's date last insured was March 31, 2004. (Tr. at 159).

4

Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

**I. Plaintiff's assertion that the ALJ erred by failing to consider her impairments in combination because he did not consider the extent to which her pain affects her**

Plaintiff avers that "objective medical reports substantiate that pain derived from multiple impairments were at least equal in severity and duration to the listed findings and/or reached medical equivalency to a listing." (Doc. No. 14, p. 9). Plaintiff asserts that the appropriate legal standard was not applied by the ALJ when he evaluated

AO 72A
(Rev. 8/82)

Plaintiff's pain. Finally, Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony about her pain.

The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals" a listed impairment. (Tr. at 22). Plaintiff avers that "objective medical reports substantiate that pain derived from multiple impairments were at least equal in severity and duration to the listed findings and/or reached medical equivalency to a listing." (Doc. No. 14, p. 9). However, Plaintiff does not state which listing her combination of impairments meets or medically equals. Furthermore, it is clear from the ALJ's opinion that he considered Plaintiff's severe impairments in combination. It is also clear from the ALJ's opinion that he considered Plaintiff's subjective complaints of pain and applied the appropriate legal standard to those complaints.

In order to establish disability based on testimony of pain and other symptoms, a social security disability benefits claimant must show: (1) evidence of underlying medical condition; and (2) either (a) objective medical evidence confirming severity of alleged pain, or (b) that objectively determined medical condition could reasonably be expected to give rise to claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). Even if the administrative law judge finds that a claimant has met this standard, he may still reject the claimant's complaints of pain if he finds them not credible. See 20 C.F.R. § 404.1529(a), (c). If a plaintiff "testifies as to [her] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely

disabling symptoms."[3] Dyer, 395 F.3d at 1210 (quoting Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir.1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210–11 (quoting Foote, 67 F.3d at 1561).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged pain symptoms, but he did not find her statements regarding the intensity, persistence, and limiting effects of her pain symptoms to be credible. (Tr. at 27). The ALJ stated that "[a] review of the evidence from the claimant[']s treating and examining physician[s] shows that the claimant[']s reports of the level of her pain, the frequency of her pain, and the level of functional and mental limitations resulting from pain are not consistent with the objective, clinical evidence of record." (Tr. at 22). Specifically, after chronicling Plaintiff's medical records, (Tr. at 19–22), the ALJ noted that "the several x-rays and the MRI scans of the claimant[']s joints and spine have consistently failed to reveal any abnormality that would account for her alleged symptoms of pain, weakness, and numbness." (Tr. at 22). The ALJ also later re-stated his position that "[t]he claimant[']s physical complaints are [ ] found to be inconsistent with the objective medical evidence of record and her

---

[3] This requirement is not as stringent as it seems. The Court of Appeals for the Eleventh Circuit has upheld an administrative law judge's credibility finding regarding a claimant's testimony as to her limitations as sufficient, even when that finding is only implied, when "it is clear" and the administrative law judge "considered [the claimant's] subjective complaints in light of the record as a whole and adequately explained his decision not to fully credit [the claimant's] alleged limitations on her ability to work." Brown v. Comm'r of Soc. Sec., 442 F. App'x 507, 514 (11th Cir. 2011).

7

own reported activities." (Tr. at 26). Again the ALJ noted that "the objective medical evidence discloses no physical problems to account for her allegations of severe, chronic back and knee pain or for her complaints of numbness along one side of her body. X-rays of her back and knees are normal and she has demonstrated full range of motion in her joints and normal strength and sensation in both her upper and lower extremities. She also demonstrated her ability to squat and bend during her physical examinations." (Id.). The ALJ added that Plaintiff's "daily activities are found to be inconsistent with her allegation of chronic and disabling pain and functional limitations." (Tr. at 27). The ALJ had previously noted that Plaintiff reported living with and caring for her 6-year-old granddaughter, that she has a driver's license and the ability to drive, that she takes care of her own personal hygiene and grooming, that she does some of her own cooking and cleaning, that she attends church where she volunteers as an usher, and that she occasionally eats out with her granddaughter. (Tr. at 21). The ALJ applied the appropriate legal standard and clearly articulated "explicit and adequate reasons for discrediting" Plaintiff's testimony. Dyer, 395 F.3d 1210.

II.     **Plaintiff's assertion that the ALJ erred by discrediting the opinion of Dr. Hines, Plaintiff's treating physician, regarding Plaintiff's residual functional capacity**

Plaintiff asserts that the ALJ erred by not assigning considerable weight to the opinion of Dr. Hines, Plaintiff's treating physician, regarding Plaintiff's residual functional capacity. Plaintiff states that Dr. Hines testified, in a deposition in Plaintiff's worker's compensation case, that Plaintiff's shoulder injury imposed the following limitations: no heavy lifting, lifting over 20 pounds only occasionally, no overhead work,

AO 72A
(Rev. 8/82)

and restriction to sedentary work. (Doc. No. 14, p. 14). The ALJ did not include these limitations in his residual functional capacity determination. (Tr. at 24).

Ordinarily, the opinion of a "treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted). "Good cause" exists where the doctor's opinion "was not bolstered by the evidence, or where the evidence supported a contrary finding[, . . . or] where the doctors' opinions were conclusory or inconsistent with their own medical records." Id. (citations omitted). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Id. (citation omitted). See also Watkins v. Comm'r of Soc. Sec., 2012 WL 399995 *3 (11th Cir. 2012) (finding that the administrative law judge's omission of a treating physician's sit/stand limitation from the claimant's residual functional capacity "[w]ithout a clear explanation" precluded the court from "determin[ing] whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence").

However, Dr. Hines residual functional capacity opinions are irrelevant to the instant case. Dr. Hines' opinion, that Plaintiff "should avoid work higher than the level of the chest, and should not be doing regular lifting of any weight more than 20 pounds," is from a February 15, 2001, evaluation. (Tr. at 285) (See also Tr. at 126). As previously noted, the ALJ's opinion only considered the period from February 1, 2003, through the date of the decision, December 30, 2008. This is because Plaintiff had filed prior applications on October 15, 2001, alleging the same onset date, which were denied by an Administrative Law Judge on January 31, 2003. (Tr. at 16). The

ALJ determined that the prior applications should not be reopened. (Id.). Because the relevant time period began on February 1, 2003, only medical evidence after that date is relevant. Consequently, it was not error for the ALJ to omit consideration of Dr. Hines' February 2001 opinion.

### III. Plaintiff's assertion that the ALJ erred by not finding Plaintiff presumptively disabled under Listing 12.05

Plaintiff asserts that the ALJ erroneously failed to find that she meets the requirements for presumptive disability as stated in Listing 12.05, dealing with mental retardation. The ALJ determined that Plaintiff has the severe impairment of borderline IQ but that she "is not functionally mentally retarded," (Tr. at 22), and that she does not meet Listing 12.05, (Tr. at 23–24).

Listing 12.05, which describes the criteria to qualify for benefits based on mental retardation, states, in part,

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.05. The Court of Appeals for the Eleventh Circuit "recognize[s] that a claimant meets the criteria for presumptive disability under listing 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 and evidence of additional mental or physical impairment." Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001); see also Lowery v. Sullivan, 979 F.2d 835, 838 (11th

Cir. 1992). "[T]here is a presumption that mental retardation is a condition that remains constant throughout life." Hodges, 276 F.3d at 1266. "[A] claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." Id. However, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837 (citing Popp v. Heckler, 779 F.3d 1497, 1499 (11th Cir. 1986) (rejecting a claim of Listing 12.05(C) mental retardation)).

In June 2008, psychologist John S. Muller, Ph. D., performed a psychological evaluation of Plaintiff. He reported that WAIS-III testing revealed that Plaintiff had a full scale IQ of 58.[4] (Tr. at 454). Based on this score, Dr. Muller stated that "she is currently functioning in the Mild Range of Mental Retardation." (Id.).

The ALJ declined to adopt Dr. Muller's assessment and determined that Plaintiff's WAIS-III score does not represent a valid estimate of her premorbid IQ. (Tr. at 22, 23). In support of this determination, the ALJ stated that Dr. Muller's evaluation is inconsistent and that there is a lack of objective evidence to support his findings, (Tr. at 22), and that Plaintiff's WAIS-III score is inconsistent with her admitted level of functioning, (Tr. at 23). Specifically, the ALJ noted that Dr. Muller cited Plaintiff's ability to live independently while raising her three children and Plaintiff's current ability to raise her 6-year-old granddaughter. (Tr. at 22). The ALJ noted that Dr. Muller also concluded that Plaintiff "could understand and retain simple assessment related decision" and that Plaintiff has the ability to "maintain focus and retain material from the

---

[4] The ALJ noted that Plaintiff's 2002 WAIS-III testing revealed that Plaintiff had a full scale IQ of 66. (Tr. at 22). As previously discussed, the relevant medical evidence begins with February 1, 2003.

11

news broadcast[.]" (Id.). Furthermore, the ALJ noted that "Dr. Muller appears to have failed to consider the fact that claimant graduate[d] high school without any special services and worked for over 10 years as a longshoreman[.]" (Id.). As further evidence in support of discrediting Plaintiff's WAIS-III score, the ALJ noted that Plaintiff admits that she has the ability to drive and make financial decisions. (Id.).

Without credible, valid IQ scores below 70, the ALJ was not required to find Plaintiff mentally retarded pursuant to Listing 12.05(B) or (C). Moreover, the ALJ's finding that Plaintiff does not meet or equal Listing 12.05 is supported by substantial evidence. (Tr. at 22–24).

### IV. Plaintiff's assertion that the ALJ erred by not posing complete hypothetical questions to the vocational expert

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Lee v. Comm'r of Soc. Sec., 448 F. App'x 952, 953 (11th Cir. 2011) (quoting Wilson, 284 F.3d at 1227). "The ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported, however." Id. (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004)).

The ALJ did not include as limitations of Plaintiff's residual functional capacity the many limitations Plaintiff's counsel asserts she has. (Tr. at 24). Clearly, the ALJ determined that Plaintiff does not have those limitations. That determination is supported by substantial evidence. (Tr. at 24–27). As a result, the ALJ was not required to include those limitations in his hypothetical questions to the vocational expert. Furthermore, the ALJ did, in fact, pose complete hypothetical questions to the vocational expert. The ALJ determined that Plaintiff had the residual functional

AO 72A
(Rev. 8/82)

capacity to perform work at all exertional levels, with the following limitations: she is limited to performing simple work that does not require prolonged personal interaction and she must be allowed to take anti-allergy medications, which do not cause any vocationally significant side effects. (Tr. at 24). The hypothetical the ALJ posed to the vocational expert reads as follows:

> Now I'm going to give you what is sometimes called a cascade hypothetical question in the sense that we start on the physical aspect of it at no exertional impairment and running down to light, it runs the gamut of medical assessments we have in the file. And then we'll go to mental limitations which is best suited for simple work which does not require prolonged interpersonal interactions. That's at all of the various levels. Due to allergic Rhinitis also be allowed to take anti-allergy medications which control symptoms of that which do not have any vocational significant side effects on the evidence of record. Now you can take this as being either four different hypothetical questions starting with no exertional limit, number one, then go like to heavy, medium and then to light, that will be two, three and four or you can just give it as a single hypothetical question. But the bottom line question I have for you based on the hypothetical in your professional opinion could the claimant return to any of her prior work either as done in the national economy or as she has done it?

(Tr. at 504). The ALJ included in his hypothetical all of the limitations he included in Plaintiff's residual functional capacity. Consequently, the vocational expert's answer, that such a hypothetical person could return to Plaintiff's past relevant work, constitutes substantial evidence in support of the ALJ's decision. See Lee, 448 F. App'x at 953. Moreover, the ALJ later went further than necessary and added that the hypothetical person experienced moderate pain; the vocational expert's testimony did not change even with that additional limitation. (Tr. at 505). The Court finds no error with regard to the questions posed to the vocational expert by the ALJ.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 14th day of December, 2012.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)